### DILLON v. UNITED STATES.
### CROWLEY v. SAME.
#### Nos. 11645, 11647.

Circuit Court of Appeals, Eighth Circuit.
July 16, 1940.

Rehearing Denied Aug. 5, 1940.

Frank J. Comfort, of Des Moines, Iowa, for appellant Lewis E. Crowley.

Walter F. Maley, of Des Moines, Iowa, for appellant Sidney J. Dillon.

Cloid I. Level, Asst. U. S. Atty., of Des Moines, Iowa (Hugh B. McCoy, U. S. Atty., of Oskaloosa, Iowa, and William R. Sheridan, Asst. U. S, Atty., of Keokuk, Iowa, on the brief), for appellee.

Before WOODROUGH and THOMAS, Circuit Judges, and BELL, District Judge.

WOODROUGH, Circuit Judge.

Sidney J. Dillon and Lewis E. Crowley were indicted upon ten counts (1–10) for violation of 18 U.S.C.A. § 338 (the mail fraud statute) and upon two counts (11 and 12) for violation of 15 U.S.C.A. § 77q (a) (2) (the Securities Act of 1933 as amended). They each pleaded nolo contendere to two counts (one and twelve) and were thereupon sentenced: Dillon to five years' imprisonment on each of the two counts, to run concurrently, and a thousand dollar fine; and Crowley to three years' imprisonment on each of the counts, to run concurrently, and a thousand dollar fine. They have prosecuted separate appeals from the final judgments which have been heard together upon the same record.

It appears from the record that after the pleas of nolo contendere were entered by the defendants the court passed the cause for sentence to a date twenty-eight days later. On the appointed day, the defendants appeared and filed a motion to dismiss and quash the indictment and for discharge of the defendants, and an amendment thereto. The District Attorney protested that in view of the plea of nolo contendere the motion could not then be made, but the court expressed the opinion that the sufficiency of the indictment could be inquired into at any time, and the motion and amendment having been argued by counsel, the court overruled the same and directed that the record show that the motion and the amendment were ordered to be argued before taking up the matter of the pleas of nolo contendere, and that "the court being advised", had then made its ruling and allowed exception.

The record as to the court's hearing and disposition of the motion and the amendment was doubtless kept clear in this manner to prevent our confusing in any way the court's action on the motion with its action respecting the pronouncement of sentence on the defendants' pleas of nolo contendere. The court had assigned the cause at that time only for pronouncement of sentence on the pleas, but the defendants had each filed typewritten statements which were treated and considered by the court as their statements of cause why judgment should not be pronounced against them, and in addition they offered testimony in their behalf. The District Attorney also had filed a typewritten statement advising the court of the testimony which he believed was available to the government to sustain the charges of the indictment. In their respective statements the defendants had also given their version of the matters covered by the statement presented by the District Attorney. The defendants made no request to withdraw their pleas of nolo contendere. Their counsel stated: "the Court may make any inquiry into the facts that may assist him, and we are merely offering it [the proffered testimony[1]] to aid the court in determining these legal questions that will come up to be determined". "We don't question the effect of the plea." The court therefore made its position plain on the record that it would not hear evidence on whether the facts warranted the indictment and that it would not "go behind the indictment". But the court stated, "I don't like to arbitrarily say the gentlemen can not make a record on their position * * *," and it appointed an official reporter to make up a record of the proceedings which were had before it. They consisted of offers of proof made by defendants, arguments of counsel, colloquy and discussion between the court and counsel, questions propounded to defendants and answered by them, and evidence of the good character of the defendants. The court clearly indicated by its rulings and statements that it would not hear evidence to contradict the indictment or to show its insufficiency, but would "take the evidence" as indicated by the record for the purpose of aiding in passing sentence. Counsel for defendants also made eloquent pleas for leniency for their clients, conceding as to defendants that "they did some things they ought not to do", but urging that they stood before the court "as good citizens, engaged in honorable pursuits in life, unfortunate in the situation in which they find themselves", and that they did not come within the class that needed to be isolated for the benefit of the public. The court, in passing sentence, expressed a contrary view of the nature of the offenses charged against the defendants, admitted by their plea, and explained by the statements considered during the proceedings. The formal journal entry of the judgment of sentence appears in the record duly signed by the judge.

On this appeal the substance of the points argued for reversal is (1) that the indictment fails to charge an offense; (2) that the court considered incompetent evidence and failed to consider competent evidence tendered by defendants; (3) that there was improper joinder of parties and of offenses; (4) that the judgment entered does not conform to the oral pronouncement of the court; (5) that there was unjust discrimination between the defendants in the different penalties imposed; (6) that the punishment was cruel and excessive; (7) that the court was confused as to the law and facts; (8) that the defendants did not have a fair trial.

### Opinion.

(1) The first count of the indictment plainly and sufficiently charges both defendants with the commission within the period of the statute of limitations of the offense denounced by the mail fraud statute, 18 U.S.C.A. § 338. A copy omitting the formal parts is appended,[2] and no good

---

[1] Interpolated.

[2] "Count One.

"That prior to the several acts of using, and causing to be used, the United States mails, hereinafter set forth, Sidney J. Dillon and Lewis E. Crowley, hereinafter called 'defendants', at Des Moines, County of Polk and State of Iowa, in the Central Division of the Southern District of Iowa, and within the jurisdiction of this Court, having devised and intended to devise a scheme and artifice to defraud and to obtain money and property by means of false and fraudulent pretenses, representations and promises from numerous and sundry persons, too numerous to mention herein, hereinafter called investors, including all persons who could or might be induced by means of said false and fraudulent pretenses, representations and promises, hereinafter mentioned, to become purchas-

purpose could be served by discussion of the attacks that were made upon it after the defendants had pleaded to it. As the sentence of imprisonment and fine imposed under the first count of the indictment did not equal the maximum penalty fixed by the applicable statute, and the imprisonment under the twelfth count runs concurrently with that under the first count, there is no occasion to discuss the suffici-

ers of shares in investment trusts operated and controlled by the said defendants, to-wit: American Securities Trust, Mutual Trust Shares, and Cooperative Trust Shares;

"That as a part of said scheme and artifice to defraud and to obtain money and property by means of false and fraudulent pretenses, representations and promises, the defendants under their own names respectively, and under the names of the American Securities Trust, Mutual Trust Shares, Cooperative Trust Shares, National Securities Corporation, and the Mid West Discount Corporation, by means of correspondence and circular letters and by the said defendants directly through personal solicitation and through personal solicitation by salesmen and agents, would and did make and cause to be made false and fraudulent pretenses, representations and promises, as follows, to-wit:

"(A) That as trustees of each of said Trusts so operated by said defendants, they would invest the capital of each of said Trusts only in securities, bonds, stocks, debentures, and obligations of public or private corporations, which had their securities listed on what is known as the New York Stock Exchange, or in Government bonds, whereas in truth and in fact, as the said defendants, and each of them, then and there well knew, the said defendants as Trustees of each of said Trusts would not invest the capital of each of said Trusts. only in securities, bonds, stocks, debentures and obligations of public or private corporations, which had their securities listed on what is known as the New York Stock Exchange, or in Government bonds, but on the contrary the said Trustees would and did divert a substantial portion of the capital of said Trusts to the use and benefit of the said defendants, and to other individuals to these Grand Jurors unknown, and to corporations and trusts dominated and controlled by the said defendants.

"(B) That any returns to the investors by way of dividends or earnings would be paid solely from the earnings and income of the investments made by the Trusts and from the profits from the purchases and sale of securities owned by said Trusts, whereas in truth and in fact, as the said defendants, and each of them then and there well knew, the said returns to the investors would not be paid solely from earnings and income of the investments made by the Trusts and from the profits from the purchases and sale of securities owned by said Trusts, but on the contrary pretended and fictitious returns were paid in substantial amounts from capital.

"(C) That the shares of said Trusts would be sold and issued only upon the payment of cash to the Trustees of said Trusts, whereas in truth and in fact as the said defendants, and each of them then and there well knew, the shares of said Trusts would not be sold and issued only upon the payment of cash to the Trustees of said Trusts, but on the contrary said Trustees authorized and acquiesced in the sale and issuance of such shares without cash being paid therefor to the Trustees of said Trusts.

"(D) That the money and property secured from the investors in each of said Trusts would be invested and held intact for the benefit of the investors in each respective Trust, whereas in truth and in fact, as the said defendants and each of them then and there well knew, the money and property secured from the investors in each of said Trusts would not be invested and held intact for the benefit of the investors in each respective Trust, but on the contrary the defendants, and each of them, would and did divert to their own uses and benefits, to the use and benefit of other persons, and to the use and benefit of corporations and trusts dominated and controlled by the said defendants, certain of the funds and assets of each of said Trusts.

"(E) That the expense of managing said Trusts would be limited solely to annual remuneration to be paid to said defendants as Trustees of each of said Trusts at a rate not to exceed one-half of one percent quarterly of the value of the assets of said Trusts; whereas in truth and in fact, as the said defendants and each of them then and there well knew, the expense of managing said Trusts would not be limited solely to annual remuneration to be paid to said defendants as Trustees of each of said Trusts at a rate not to exceed one-half of one per cent quarterly of the value of the assets of the said Trusts, but on the contrary by subterfuge the said defendants would and did pay to themselves an additional annual remuneration for the management of said Trusts, in an amount sev-

ency of the twelfth count. Miller v. United States, 8 Cir., 295 F. 602. We think it also stated an offense.

(2) The extent of the sentence to be imposed upon the defendants was within the discretion of the trial court. It is settled that the pleas of nolo contendere were confessions of guilt for the purpose of the case, and sentence of both imprisonment and fine could be imposed upon such plea. Hudson v. United States, 272 U.S. 451, 47 S.Ct. 127, 71 L.Ed. 347. The court accorded the defendants full opportunity to give their version of all the matters involved in the charges against them, and they availed themselves of the opportunity. The court properly refused to "go behind the indictment", or to turn its proceedings relative to the imposition of sentence into a trial of the case. It heard everything proffered that tended to aid in exercising its discretion, and the attacks now made upon the procedure by which it became advised as to the sentence proper to be imposed are without merit.

(3) The fact that a charge of violation of the mail fraud statute was joined in the same indictment, but in different counts, with a charge of violation of the Securities Act, did not render the indictment defective, and certainly such fact presents no ground to reverse the judgments entered upon pleas of nolo contendere. The two officers of the common law trusts who co-operated in the commission of the offenses were properly joined as defendants in the same indictment.

(4) In its oral pronouncement of sentence, the court ordered that Mr. Dillon be committed for a period of five years and fined a thousand dollars on each count, running concurrently (referring to the two counts to which he had plead nolo contendere). The judge thereupon, on the same day, made and signed the formal judgment entry. It omits any fine on the twelfth count and specifies an institution of the penitentiary type, to be designated by the Attorney General, as the place of imprisonment, and is entirely regular in form. This record so made presents no irregularity that would justify this court in remanding the case to have the District Court re-sentence the defendant, and no

eral times greater than one-half of one per cent quarterly of the value of the assets of said Trusts.

"(F) That these defendants as Trustees of said Trusts would periodically publish and distribute to the investors in each of said Trusts details and information concerning the portfolios of said respective Trusts designed to apprise said investors of important details of the respective portfolios of said Trusts, and of the status and condition of said respective Trusts; whereas in truth and in fact, as the said defendants and each of them then and there well knew, they would not periodically publish and distribute to the investors in each of said Trusts details and information concerning the portfolios of said respective Trusts designed to apprise said investors of important details of the respective portfolios of said Trusts, and of the status and condition of said respective Trusts, but on the contrary the said defendants would and did periodically publish and distribute to the said investors information which was and could be of no value to said investors.

"(G) That the Trusts were operating under the laws of the State of Iowa and by reason thereof were complying with the laws and regulations of the State of Iowa relating to the sale of Securities, whereas in truth and in fact, as the said defendants and each of them then and there well knew, the Trusts were not complying and would not comply with the laws of the State of Iowa, but on the contrary the defendants as Trustees of said Trusts falsely represented to the Securities Commission of the State of Iowa the condition of the Trusts.

"And the Grand Jurors aforesaid, upon their oaths aforesaid, do further find and present that the said defendants and each of them, by means of said scheme and artifice to defraud and for obtaining money and property by means of false and fraudulent pretenses, representations and promises, hereinabove set forth, did induce the said investors to trade and exchange their money and property for the shares of said Trusts.

"And the Grand Jurors further present and charge that they, the said defendants, so having devised and intending to devise the aforesaid scheme for the obtaining of money and property by means of false and fraudulent pretenses, representations and promises, for the purpose of executing said scheme and in attempting so to do, on or about the 22nd day of April, A. D. 1936, at the City of Des Moines, County of Polk and State of Iowa, in the Central Division of the Southern District of Iowa, and within the jurisdiction of this Court, did knowingly, unlawfully, wilfully and feloniously

prejudice can be occasioned the defendant by the form of judgment as it appears in the record. The oral pronouncement as to Mr. Crowley was that he be committed for three years on each count and a thousand dollar fine. The formal judgment entry as to Mr. Crowley included the fine as part of the punishment under the first count and specified an institution of the penitentiary type, to be designated by the Attorney General, as the place of imprisonment. There is no irregularity to justify a remand to make correction, and no prejudice. Much less is there any ground for reversal of either judgment.

Proper commitments will doubtless issue upon the sentences as they appear of record.

(5) The fact that one defendant was given a heavier sentence than the other affords no ground of complaint for either.

(6) Neither of the sentences was cruel and excessive.

(7) We find nothing in the remarks made by the court in the course of imposing sentence to justify criticism. The court expressed severe condemnation of the breaches of trust committed by the defendants before him and such was his duty.

(8) The appellants have no standing, in view of their pleas of nolo contendere, to argue that they did not have a fair trial. By entering their pleas they precluded a trial.

Affirmed.

place and cause to be placed in an authorized depository for mail matter, to-wit, a Post Office in the City of Des Moines, Iowa, to be sent and delivered by the Post Office establishment of the United States a certain writing, to-wit, a letter dated April 22, 1936, signed by the Cooperative Trust Shares, enclosed in a postpaid envelope addressed to Mrs. Etta L. Heefner, 654—46th St., Des Moines, Iowa, which said letter is in words and figures as follows, to-wit:

"That at the time of placing and causing to be placed said letter in the Post Office of the United States as aforesaid, they, the said defendants, and each of them, then and there well knew that said letter was for the purpose of executing said scheme and artifice and in attempting so to do;

"Contrary to the form of the statute in such case made and provided and against the peace and dignity of the United States of America."

" 'Sidney J. Dillon, Pres.
" 'L. E. Crowley, Vice-Pres.
" 'O. P. Lightfoot, Vice-Pres.
" 'H. M. Gustafson, Sec-Treas.

Cooperative Trust Shares
703 Register and Tribune
Building—Des Moines, Iowa.
" 'April 22, 1936.

" 'Mrs. Etta L. Heefner,
" '654—46th St.,
" 'Des Moines, Iowa.
" 'Dear Mrs. Heefner:
" 'We beg to enclose herewith the following securities, receipt of which please acknowledge on enclosed blank.
" '766 shares          Certificate #458          $1.14          $873.24
" 'Very truly yours,
" 'EB          Cooperative Trust Shares.'